Salas Soler, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El 12 de febrero de 2008, Ricardo A. Rivera Cardona (Recurrente) presentó este recurso de revisión respecto la Opinión sobre Reconsideración que emitió la Oficina de Ética Gubernamental (OEG o Recurrida) el 17 de enero, la cual notificó el día 18 del mismo mes. En su determinación, la OEG reiteró su Opinión del 26 de noviembre de 2007, en la que concluyó que la aceptación por parte del Recurrente de la oferta de empleo de la Cooperativa de Seguros de Vida (COSVI), podría constituir una violación a la Ley de Ética Gubernamental (LEG).
Con atención a una solicitud de auxilio de jurisdicción que presentó ante nosotros el Recurrente, le ordenamos a la OEG expresarse en un abreviado término. Con el beneficio de su comparecencia y los autos, resolvemos.
I
Se trata de una causa de difícil discernimiento. El Recurrente fungió como Director Ejecutivo de la Compañía de Comercio y Exportación de Puerto Rico (CCEPR), y Secretario del Departamento de Desarrollo Económico y Comercio del Gobierno del Estado Libre Asociado de Puerto Rico, entre enero de 2005 y noviembre de 2007. Entre sus funciones y deberes, figuraba: “Firmar, otorgar y entregar, a nombre de la Compañía, las escrituras públicas, contratos, acuerdos, compromisos, documentos o instrumentos públicos de cualquier clase o naturaleza, que pueda ser necesario, propio o conveniente para el ejercicio de cualesquiera de los poderes aquí descritos, o poderes adicionales que le puedan ser otorgados en el futuro al Director Ejecutivo". Apéndice del Recurrente, página 15.
*1095 Durante años, COSVI proveyó a los empleados de la CCEPR el seguro médico, incluso antes de la incumbencia del Recurrente. El proceso de selección del plan médico, a modo de resumen, consistía en que una compañía de corredor o broker contratada por la CCEPR hacía el análisis de las ofertas de distintas compañías aseguradoras, lo cual luego presentaba a los empleados de la CCEPR, a través de la División de Recursos Humanos. Los empleados a su vez, representados por la Unión General de Trabajadores (UGT), seleccionaban el proveedor del plan médico y en virtud de su decisión, la CCEPR otorga el correspondiente contrato con la compañía aseguradora. La decisión de la selección radicaba exclusivamente en los empleados. En los últimos años, COSVI ha sido la compañía contratada para estos fines. No obstante, a partir de julio de 2007, los empleados escogieron a MCS como aseguradora.
A mediados del 2007, el presidente ejecutivo de COSVI anunció su renuncia, efectiva a diciembre de 2007. Por tal razón, COSVI contrató a Burckhart Consulting Corp. (BCC) para buscar candidatos a la vacante. Luego de identificar y entrevistar candidatos, BCC recomendó siete finalistas, incluso al Recurrente. El Comité Ejecutivo de la COSVI los entrevistó y escogió tres finalistas, entre éstos, el Recurrente.
El Recurrente alega que el 21 de septiembre de 2007, fue la primera ocasión en que la COSVI lo contactó respecto a la vacante. La OEG no refutó esta alegación.
El 22 de octubre de 2007, COSVI determinó que el Recurrente era el mejor candidato. Entonces, el Recurrente presentó su renuncia a la CCEPR, efectiva al 30 de noviembre de 2007. El 7 de noviembre del mismo año, el Recurrente le solicitó a la OEG una opinión sobre si existía algún impedimento legal para aceptar la oferta.
Luego de requerirle y recibir del Recurrente unos documentos y explicaciones, el 26 de noviembre de 2007, la OEG emitió Opinión en la que concluyó que: “que existe impedimento para que ¡el Recurrente] pase a ocupar un cargo con COSVI dentro del año posterior a dejar el servicio público. Ello podría constituir una violación al Artículo 3.7 (b) de la Ley de Etica Gubernamental”. Apéndice del Recurrente, página 22.
El 14 de diciembre seguido, el Recurrente solicitó reconsideración. La OEG le solicitó información adicional, la cual sometió.
El 17 de enero de 2008, notificada al siguiente día, la Recurrida emitió Opinión sobre Reconsideración, en la que reiteró su previa Opinión.
Consecuentemente, el Recurrente solicitó revisión judicial ante nos. Alegó que erró la OEG al determinar que el Artículo 3.7 (b) le aplicaba si aceptaba la oferta de empleo extendida por COSVI.
Entendemos que le asiste la razón al Recurrente. Explicamos.
II
Es firme principio de derecho apelativo que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección, por lo cual sólo intervendremos con ellas de modo excepcional, si las mismas no hallan apoyo en el expediente administrativo. P.C.M.E. Comercial, S.E. v. Junta de Calidad Ambiental, res. el 23 de diciembre de 2005, 2006 JTS 7; Misión Industrial P.R., Inc. v. Junta de Calidad Ambiental, 145 D.P.R. 908 (1998). Nuestro ejercicio de revisión debe ajustarse al criterio de razonabilidad en la actuación de la agencia recurrida. Otero Mercado v. Toyota de P.R. Corp., res. el 3 de febrero de 2005, 2005 JTS 13. Por ello, las determinaciones de hechos de las agencias serán ratificadas si se fundamentan en evidencia sustancial contenida en el expediente administrativo considerado en su totalidad. P.C.M.E. Comercial, S.E. v. Junta de Calidad Ambiental, supra. Y evidencia sustancial, es “aquella evidencia relevante que una mente razonable podría- aceptar como adecuada para sostener una conclusión”. Otero *1096 Mercado v. Toyota de P.R. Corp., supra, página 14.
Amparado en lo antecedente, corresponde al que impugna una determinación administrativa probar que la evidencia en que se apoyó la agencia no es sustancial. El Recurrente deberá entonces, “demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración". Misión Industrial P.R., Inc. v. Junta de Planificación, 146 D.P.R. 64, 131 (1998).
Sabido es que respecto a las conclusiones de derecho de las agencias, éstas serán revisables en su totalidad. 3 L.P.R.A. See. 2175. Ello no significa que los tribunales descartaremos las conclusiones e interpretaciones de la agencia, sustituyéndolas con nuestros criterios. Municipio de San Juan v. Junta de Calidad Ambiental, 152 D.P.R. 673 (2000); Ramírez Rivera v. Departamento de Salud, 144 D.P.R. 901, 907 (1999).
Explicado lo anterior, nuestra revisión debe circunscribirse a determinar si la interpretación o actuación del foro administrativo fue razonable al amparo de la autoridad que le fue delegada mediante legislación. Por lo tanto, deberemos revocar una decisión administrativa cuando consta claramente que la agencia: “(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales”. Hernández, v. Centro Unido de Detallistas, res. el 10 de agosto de 2006, 2006 JTS 140.
En lo que respecta a la LEG, Ley Número 12 del 24 de julio de 1985, según enmendada, 3 L.P.R.A. See. 1801 et seq., “¡s]abido es que uno de los propósitos principales para la creación de la Ley de Etica Gubernamental fue promover y preservar la integridad de los servidores públicos y de las instituciones de nuestro gobierno”. La LEG, "se enfoca, además, en evitar no sólo la conducta impropia de los servidores públicos, sino también ¡a apariencia de conducta impropia que éstos puedan exhibir”. O.E.G. v. Rodríguez Martínez, 159 D.P.R. 98, 123 (2003).
A estos fines, el inciso B dEl Artículo 3.7 de la LEG, 3 L.P.R.A. See. 1827, prohíbe que un ex servidor público que haya participado directamente en la contratación con una entidad, luego de un año de cesar su incumbencia, pase a ocupar un cargo en dicha entidad o adquiera un interés pecuniario en la misma. El texto exacto dEl Artículo 3.7 (b) es el siguiente:

“Ningún ex servidor público podrá, durante el año siguiente a la terminación de su empleo, ocupar cargo alguno ni tener interés pecuniario alguno, con persona o entidad alguna con la cual la agencia, oficina, dependencia o tribunal en que trabajó hubiese efectuado contratos de bienes y servicios durante la incumbencia de dicho funcionario o empleado y éste participó directamente en la contratación. ”

Según la OEG, sus opiniones han sido consistentes en que la firma de un funcionario en un contrato con una entidad, constituye una participación directa en la contratación, por lo cual le aplica la prohibición dEl Artículo 3.7 (b). Véase OEG-1987-04 de 17 de diciembre de 1986, y otras opiniones citadas en su Alegato en Oposición, páginas 13-16. La participación directa ha sido definida por la Recurrida como intervención personal en aspectos relevantes en el proceso de contratación; implica, “participación personal y sustancial mediante decisión, aprobación, desaprobación, consejo o investigación particular”. Véase OPC-97-166; OEG-1987-01 y OEG-1989-08. Más importante, para entenderse sustancial la participación, deberá ésta ser, “más que responsabilidad oficial, conocimiento, participación supeificial o participación en una cuestión puramente administrativa”. Véase OPC-97-166.
Arguye la Recurrida que la firma de un funcionario perfecciona el contrato entre la agencia o entidad pública y la entidad privada, de modo tal que este acto, la firma, no se puede minimizar a un simple acto ministerial o de carácter administrativo. Por el contrario, sugiere que con su firma el Recurrente participó *1097 directamente en la contratación con COSVI, y que surge del expediente administrativo que el Recurrente también participó en la evaluación, selección y determinación del plan médico objeto del contrato en discusión. Insiste en que aunque los empleados seleccionaron el plan, la firma del Recurrente fue la que perfeccionó el contrato.
Por último, la OEG contiende que no era necesario que el Recurrente supiera de la vacante en la COSVI, pues lo que persigue la LEG es que: “ante la percepción del público, se cuestione si la determinación de un jefe de agencia se encontraba bajo el manto de una posible relación contractual de empleo futura”. Alegato de la Recurrida, página 20.
Por su parte, y con razón, arguye el Recurrente que su participación en la contratación del plan de COSVI, “fue puramente administrativa y oficial en cumplimiento estricto del Convenio Colectivo y de su deber ministerial, pero en ninguna forma ejerció o podía ejercer facultad decisional en la determinación de la contratación”. Recurso de Revisión, página 6. Y es que la decisión y la selección del plan médico correspondían a los empleados. Tan es así, que colegimos que si el Recurrente no firmaba el correspondiente contrato, los empleados o la UGT tenían a su disposición el recurso del mandamus, 32 L.P.R.A. See. 3421.
En tomo a la vacante en COSVI y el potencial o aparente conflicto de intereses del Recurrente aceptar la oferta de empleo, no nos convence la posición de la Recurrida, porque pierde de perspectiva que cuando el Recurrente, como acto ministerial, firmaba los contratos, no tomaba decisión alguna, meramente cumplía con un deber ministerial y automático que no puede considerarse como acto “bajo el manto de una posible relación contractual de empleo futura”, pues no había posibilidad de ello, dado que la decisión del negocio contractual sólo residía en los empleados. Además, la vacante para la cual luego se le hizo la oferta al Recurrente no surgió sino luego de culminada la relación contractual entre COSVI y CCEPR.
No vemos en absoluto y sin reservas, cómo la firma del Recurrente, meramente en calidad representativa y en un contrato cuyo único y exclusivo consentimiento emanaba de los empleados, podría considerarse ante estos hechos específicos como una participación directa personal, según interpreta la OEG, lo está prohibido por el Artículo 3.7 (b), y que a su vez constituyera o representara —siquiera remotamente — , un acto de corrupción gubernamental, conducta ilegal, abuso de poder, ejercicio de influencias indebidas, conflictos de intereses, o un atentado contra la confianza del pueblo en su gobierno y sus funcionarios. O.E.G. v. Cordero Santiago; Rivera, 154 D.P.R. 827 (2001).
Visitemos brevemente los convenios relacionados con la controversia que nos ocupa.
Conforme a la letra clara del Convenio Colectivo 2002-2006, correspondía exclusivamente a los empleados la evaluación y selección del plan médico; a la CCEPR sólo le correspondía así reconocerlo, lo que se hace por conducto del Recurrente. La decisión es exclusivamente tomada por los empleados. Véase Apéndice de la Recurrida, página 187.
Asimismo, la Sección 1 dEl Artículo 34 del Convenio Colectivo 2007-2011 pauta cómo se seleccionará el plan médico de los empleados de la CCEPR, de modo tal que descarta la intervención total del Recurrente. Reproduce virtualmente el mismo texto del anterior convenio. Dispone el Artículo 34:
“La Compañía mantendrá vigente durante el término del Convenio las actuales cubiertas de plan médico de Ubre selección y proveedores actuales. Estas cubiertas podrán ser ofrecidas por otros proveedores. La Compañía informará las opciones con por lo menos un (1) mes de anticipación y los empleados seleccionarán voluntariamente el Plan de su predilección y notificarán a la Compañía a través de la Unión con por lo menos quince (15) días de antelación al vencimiento del año del plan médico, su permanencia o cambio. La Compañía solamente reconocerá un plan médico el cual será escogido por el personal unionado a base de *1098 mayoría. ” (Subrayado nuestro) Véase Apéndice de la Recurrida, página 286.
Aunque la OEG colige que como el Convenio Colectivo 2002-2006 no contenía una referencia tan explícita como la del precitado convenio, entonces el Recurrente tenía inherencia en la selección del plan, cuando lo cierto es que en ambos convenios, la selección del plan recaía exclusivamente sobre los empleados y correspondía al Recurrente únicamente la burocrática ratificación con la firma el contrato. Tan es así, que de los autos surge que el Recurrente no tenía la opción de seleccionar un plan distinto ni dejar de firmar el plan de y para los empleados gerenciales. Luego que los empleados unionados seleccionaban el plan, los empleados gerenciales no tenían opción para optar por un plan diferente.
A pesar de lo anterior, bien propone el Recurrente que el Convenio 2002-2006, en virtud de su Artículo 53 (Apéndice de la Recurrida, página 205), se prorrogó hasta la aprobación del siguiente convenio. Así pues, al firmarse el contrato del plan médico (7 de julio de 2006), el Convenio 2002-2006 estaba vigente. Apéndice de la Recurrida, página 52.
De otra parte, en junio de 2007, los empleados adscritos a la UGT cambiaron su plan médico y se afiliaron al provisto por MCS. Apéndice de la Recurrida, páginas 111-113. Por tanto, expone el Recurrente que habiendo surgido la vacante a mediados de 2007, luego de culminada la relación contractual entre la CCEPR y la COSVI, entonces tampoco existía apariencia de o conflicto de intereses alguno.
Por último, y como bien trae a nuestra atención el Recurrente, debemos recordar la siguiente expresión del Tribunal Supremo:
“Aunque nuestro país se ha visto en los últimos años sumergido en una ola de corrupción gubernamental que parece ahogarnos, no debemos permitir que en el afán de buscar soluciones inmediatas, desvirtuemos los propósitos de la Ley de Etica Gubernamental, convirtiéndola en un instrumento para cometer injusticias, dañar permanentemente la reputación de funcionarios públicos que han servido al país con dignidad, honradez y dedicación, y desalentar el que las personas más capacitadas escojan dedicarse al servicio público. ” (Subrayado nuestro) O.E.G. v. Cordero Santiago y Rivera, supra, página 856.
Amparados en la precedente discusión, concluimos que incidió la OEG al concluir que la aceptación de la oferta de empleo por el Recurrente constituía una potencial violación ética al Artículo 3.7 (b). Luego de un cuidadoso estudio de la totalidad de los autos, opinamos que erró la OEG al así interpretar la ley y aplicarla a los hechos específicos ante nuestra consideración. A la luz de la prueba ante sí, no resultaba razonable decidir como lo hizo en dos ocasiones la Recurrida. Por todo lo cual, en la situación fáctica específica que nos ocupa, no podemos sino diferir de y revocar la recurrida opinión.
Según explicamos, el Recurrente no ejerció influencia o poder decisional en la selección del plan médico de los empleados de la CCEPR. El propio Convenio Colectivo le privaba de tales facultades, mientras que los deberes de su cargo le obligaban a firmar el contrato en discusión, no en su carácter personal, sino en función meramente ministerial de la CCEPR. Es por ello que ante los hechos específicamente ante nuestra consideración, no puede su aceptación de empleo con COSVI, ex aseguradora médica de los empleados de la CCEPR, representar una violación ética. Por todo lo cual, revocamos la Opinión de la OEG, aquí recurrida.
III
En consecuencia de los esbozados fundamentos, revocamos la recurrida Opinión de la OEG, aquí recurrida.
Notifíquese de inmediato por teléfono o facsímil, y correo ordinario a todas las partes.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.
*1099 Leda. María Elena Pérez Ortiz
Secretaria Tribunal de Apelaciones